**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION**

| | |
|---|---|
| JOHN LANSBURY, | ) |
|          **Plaintiff,** | ) |
| v. | ) Case No. 09-6120-CV-SJ-RED |
| MICHAEL J. ASTRUE, | ) |
|          **Defendant.** | ) |

## ORDER

Plaintiff John Lansbury (hereinafter "Plaintiff") seeks judicial review of the Commissioner's denial of his request for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has exhausted all of his administrative remedies, and judicial review is now appropriate. After carefully reviewing the record, the Court **AFFIRMS** the decision of the Administrative Law Judge (hereinafter "ALJ").[1]

## BACKGROUND

The parties present complete facts and arguments in their briefs. The ALJ's decision also sets forth comprehensive findings of fact and conclusions of law. The parties' facts and arguments and the ALJ's findings and conclusions are repeated herein only as necessary to explain the Court's decision.

## LEGAL STANDARD

The Court's review is limited to determining whether the Commissioner applied the

---

[1] Because the Court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the correct standard of law, the Court adopts much of defendant's brief without quotation or citation.

correct standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion. *See Warburton*, 188 F.3d at 1050. In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See id.* The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result. *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999). This is true even if the Court might have weighed the evidence differently and reached a different result if a *de novo* review were applied. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

To receive disability benefits a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the impairment. *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The five steps are: (1) whether the claimant is currently engaging in "substantial gainful activity," (2) whether the claimant is severely impaired, (3) whether the severe impairment is, or is comparable to, a listed impairment precluding substantial gainful activity as a matter of law,

(4) whether the claimant, with his current Residual Functional Capacity ("RFC") can meet the demands of his past work, and if not; (5) whether the claimant retains the capacity to perform any other work that exists in significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing the five-step analysis). In the first four steps, the burden is on the claimant to prove that she is disabled. If the claimant is not able to perform her past work, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant can perform, although the ultimate burden of persuasion remains with the claimant. *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, 28 (2003) (noting that the existence of jobs in the national economy must be proved only at step five).

## ANALYSIS

Plaintiff presents three arguments for review: (1) whether the ALJ erred in weighing the opinions of the medical professionals, (2) whether the ALJ's RFC provided sufficient limitations for Plaintiff's mental impairments, and (3) whether the ALJ's determination that certain impairments were non-severe was proper. Each of these arguments is addressed individually below.

**I.      The ALJ Properly Evaluated and Weighed the Opinions of the Medical Professionals**

Plaintiff first argues the ALJ erred in failing to afford controlling weight to the opinions of his treating physicians, Dr. Jost, Dr. Arkin, and Dr. Burd, and in assigning controlling weight to a non-examining source. After review, the Court finds no error with the ALJ's assessment.

Regarding the treating physicians, Plaintiff argues the ALJ failed to make a specific

finding as to the weight given to their opinions. Plaintiff also argues the ALJ failed to adequately assess these doctors' opinions, and simply "mine[d] the record to find tidbits that support his ultimate decision." An ALJ is not required to discuss every piece of evidence submitted. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("[A]n ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). In this instance, the ALJ discussed these doctors' opinions, and concluded that the medical opinions indicating Plaintiff was severely restricted such that he was unable to work were inconsistent with the record. In order to be afforded controlling weight, a treating physician's opinion must not be inconsistent with the other substantial evidence. *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009). Here the ALJ cited a number of inconsistencies that support his decision not to afford controlling weight to certain medical opinions. For example, though Dr. Jost stated on October 11, 2006, that "[g]iven all of Mr. Lansbury's problems and the fact that I do not expect that any of them can be resolved or significantly improved beyond where they are at this time, I do not think that he is employable in any sort of full-time or part-time position," Plaintiff actually was working part-time at a Pizza Hut at the time of the administrative hearing. *Id.* (finding ALJ did not err in discounting treating physician's opinion that claimant could not hold a job because record showed claimant was employed as a bus driver). In addition, the ALJ noted that Dr. Jost's treatment notes in 2008 show Plaintiff's neuropathy was stable, not progressing, and Plaintiff was doing well.

Similarly, in October 2006, Dr. Arkin, who is Plaintiff's neurologist, completed a residual functional capacity questionnaire indicating Plaintiff was limited to less than sedentary work. However, the ALJ noted this questionnaire was "out of proportion" with Dr. Arkin's treatment

4

notes and Plaintiff's actual limitations. Specifically, the ALJ noted Plaintiff told Dr. Arkin shortly before the October 2006 questionnaire that his carpal tunnel syndrome was better with wrist splints. The ALJ also noted Plaintiff's activities, including working part-time as a dairy milker and at Pizza Hut, as well as Plaintiff's continued riding of horses, conflicted with Dr. Arkin's assessment of Plaintiff's capabilities. *See Medhaug*, 578 F.3d at 815-16.

Regarding Dr. Burd, Plaintiff's treating psychiatrist, the ALJ noted significant inconsistencies in the record that cast doubt on Dr. Burd's assessments. For example, Dr. Burd completed a mental impairment questionnaire indicating Plaintiff had marked difficulties maintaining social functioning and maintaining persistence, concentration, and pace, and moderate limitation in activities of daily living, but the ALJ noted Plaintiff's daily activities, including working at a Renaissance Festival, conflicted with Dr. Burd's opinion that Plaintiff had difficulty maintaining social functioning. The ALJ also noted that Plaintiff required only mild psychotropic medication to control his symptoms with intermittent treatment for depression.

Finally, the ALJ did not, as Plaintiff suggests, give controlling weight to a non-examining physician. Instead, it appears the ALJ formulated Plaintiff's RFC based upon the entire record. The ALJ thoroughly discussed the medical evidence in light of Plaintiff's activities, and found numerous inconsistencies between the activities and the treating sources' opinions. The Court finds no error with the ALJ's assessments of the various medical opinions.

## II. The ALJ's RFC Determination Included Plaintiff's Mental Limitations

Plaintiff's second argument is that the ALJ erred by failing to provide any practical ramifications in the RFC for his finding that Plaintiff had a moderate deficit in concentration, persistence and pace. In formulating the RFC, the ALJ determined Plaintiff could perform only

5

unskilled work, and could only tolerate occasional interaction with co-workers, supervisors and the public. The ALJ's RFC limitations are consistent with the evidence of record, and reflect the ALJ's findings as to Plaintiff's credible limitations. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) (recognizing that an RFC calculation need only include Plaintiff's credible limitations). Plaintiff's activities, including part-time work at Pizza Hut, regular participation in a Renaissance Festival, doing genealogy work, and reading history, indicate he has some ability to maintain concentration over extended periods and occasionally interact with others. The Court finds no error with the ALJ's RFC determination. *See Huddle v. Barnhart*, 143 F. App'x 721, 722-23 (8th Cir. 2005) (affirming ruling where ALJ found claimant with moderate difficulty maintaining concentration, persistence and pace could perform unskilled medium work in spite of mental limitation).

**III.    The ALJ Did Not Err in Finding Certain Impairments Non-severe**

Finally, Plaintiff argues the ALJ erred by failing to find his sleep apnea, degenerative disc disease, gastroesophageal reflux disease, and hypertension constituted severe impairments. After review, however, the Court finds no error. The record indicates Plaintiff's sleep apnea and gastroesophageal reflux disease were controlled with treatment. *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (concluding an impairment cannot be considered disabling if it can be controlled through treatment). In addition, the record also reveals Plaintiff failed to follow the prescribed treatment for his sleep apnea and hypertension, which weighs against finding the effects of these impairments were severe. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Regarding Plaintiff's degenerative disc disease, there is very little evidence in the record regarding the disorder. Plaintiff's doctor at one time diagnosed chronic back pain, but did not

6

mention degenerative disc disease.

On review, the Court finds the ALJ did not err in finding these impairments were not severe.

## **CONCLUSION**

For the reasons cited herein, the decision of the Administrative Law Judge is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

DATED:    August 3, 2010                             */s/ Richard E. Dorr*
                                                    RICHARD E. DORR, JUDGE
                                                    UNITED STATES DISTRICT COURT